UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 5:16 CR 180 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| JURMAINE A. JEFFRIES, | ) | |
| | ) | |
| Defendant | ) | ORDER |

Currently pending before the court is Defendant Jurmaine A. Jeffries's ("Defendant" or "Mr. Jeffries") Motion for a New Trial Under Federal Rule of Criminal Procedure 33 ("Motion") (ECF No. 130). For the following reasons, the court grants Mr. Jeffries's Motion on the ground of substantial legal error. The court does not address Defendant's Motion for a New Trial on the basis that the verdict was against the manifest weight of the evidence.

### I. BACKGROUND

In Count One, Plaintiff United States of America ("Plaintiff" or the "Government") charged Mr. Jeffries with distribution of fentanyl. Specifically, Count One of the Indictment states:

> On or about September 16, 2015, in the Northern District of Ohio, Eastern Division, the defendant, JURMAINE A. JEFFRIES, did unlawfully, knowingly and intentionally distribute a quantity of a mixture or substance containing a detectable amount of Fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

(Indictment 1, ECF No. 1.) Count One further alleged that death resulted from the use of the fentanyl distributed by Mr. Jeffries, in violation of 21 U.S.C. § 841(b)(1)(C):

> The allegations of Count 1 are hereby re-alleged and incorporated by reference herein. It is further alleged that on September 16, 2015, in Akron, Ohio, a person whose identity is known to the Grand Jury (J.H.) did fatally ingest and overdose on a controlled substance, namely Fentanyl, which had been distributed by JURMAINE A. JEFFRIES to J.H. (the deceased person).

(*Id.* at 2.)

Count Two charged Mr. Jeffries with possessing with intent to distribute fentanyl. Specifically, Count Two of the Indictment states:

> On or about September 16, 2015, in the Northern District of Ohio, Eastern Division, the defendant, JURMAINE A. JEFFRIES, did unlawfully, knowingly and intentionally possess with the intent to distribute approximately 38 grams of a mixture or substance containing a detectable amount of Fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

(*Id.* at 1–2.)

In his proposed jury instructions, Mr. Jeffries asked the court to instruct the jury that, in order to convict him under the § 841(b)(1)(C) "death enhancement" of Count One, "[t]he government must also prove beyond a reasonable doubt that the death of J.H. was the natural and foreseeable result of the defendant's actions." (Def.'s Proposed Jury Instructions, ECF No. 104.) By contrast, the Government asked the court to instruct the jury that:

> [t]he government must prove beyond a reasonable doubt that but for the use of the drugs that the defendant distributed, J.H. would not have died. But-for causation exists where use of the controlled substance combines with other factors to produce death, and death would not have occurred "without the incremental effect" of the controlled substance. The government is not required to prove that the defendant intended to cause

> the death of [the victim] or that his or her death was foreseeable by the defendant or by others.

(Gov.'s Proposed Jury Instructions, ECF No. 103.) The court rejected Mr. Jeffries's proposed instruction and instructed the jury as follows regarding the § 841(b)(1)(C) death enhancement:

> In order to establish that the drugs distributed by the Defendant resulted in the death of J.H., the Government must prove that J.H. died as a consequence of her use of the drugs the Defendant distributed on or about the date alleged in the Indictment. This means that the Government must prove beyond a reasonable doubt that but for the use of the drugs the Defendant distributed, J.H. would not have died. But for causation exist[s] where death would not have occurred had the controlled substance distributed by the Defendant not been ingested by J.H. In other words, there is but for causation where use of the controlled substance combined with other factors to produce death and death would not have occurred without the incremental effect of the controlled substance.

(Tr. of Apr. 5, 2018, at 920.)

A jury trial regarding the charges against Mr. Jeffries commenced on March 28, 2018. The Government called sixteen witnesses and Mr. Jeffries called one witness.[1] It was established during trial that J.H., a long-term drug user, was found dead in her home on September 16, 2015, at 3:51 p.m., surrounded by drug paraphernalia. The cause of J.H.'s death was fentanyl toxicity. Most notably with respect to Count One, the Government presented evidence indicating numerous contacts between J.H. and Mr. Jeffries between 6:47 a.m. and 2:42 p.m. on the day of J.H.'s death. These contacts included text messages from J.H. to Mr. Jeffries stating, "Need 2 G ASAP", "R u ok? I don't have a lot of time left 4 this 1", and "Please soon they're thinking I'm not going to make it good don't wait much longer." (Def. Ex. A.) These contacts also included a message from Mr.

---

[1] This court's Order of June 15, 2018 (ECF No. 155), denying Mr. Jeffries's Rule 29 Motion, includes additional discussion regarding the facts presented at trial.

Jeffries to J.H. at 12:28 p.m. stating, "B there shortly", as well as a phone call from J.H. to Mr. Jeffries at 2:42 p.m. (*Id.*)

Mr. Jeffries did not contest the allegations against him in Count Two at trial. The evidence presented with respect to Count Two indicated that a few hours after J.H. was found deceased, officers used J.H.'s cell phone to send a text message to Mr. Jeffries stating, "Need 2 more G ASAP." (*Id.*) Mr. Jeffries responded by asking, "Separate?", to which the officers replied, "Ys." (*Id.*) Mr. Jeffries arrived at J.H.'s residence around 7:30 p.m. that evening with two separately packaged grams of a substance later determined to contain fentanyl. He also possessed a large bag of a substance later determined to contain fentanyl. In support of both counts against Mr. Jeffries, the Government offered cell tower evidence suggesting that the towers Mr. Jeffries's phone utilized when he called J.H.'s phone around 7:26 p.m. on September 15, 2016, were the same towers utilized when he called J.H.'s phone around 2:37 p.m. the same day.

On April 5, 2018, the jury returned a guilty verdict on both counts and found that the § 841(b)(1)(C) death enhancement applied. (Jury Verdict, ECF No. 125.) On April 12, 2018, Mr. Jeffries timely filed the present Motion, which he supplemented pursuant to court approval on April 30, 2018 ("Jeffries's First Supplement") (ECF No. 145), May 4, 2018 ("Jeffries's Second Supplement") (ECF No. 146), and May 17, 2018 ("Jeffries's Third Supplement") (ECF No. 149)[2]. On April 16, 2018, the Government filed its Preliminary Response to the Motion (ECF No. 134), which it supplemented (ECF No. 150) pursuant to court approval on May 18, 2018.

---

[2] Mr. Jeffries's Third Supplement corrects only the page identification numbers in his First Supplement.

## II. LEGAL STANDARD

Rule 33 of the Federal Rules of Criminal Procedure provides that "the court may grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The defendant bears the burden of showing that a new trial should be granted, and a district court has the "sound discretion" to grant or deny a motion for a new trial. *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991). The Sixth Circuit explains that "it is widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010) (citation omitted). Substantial legal error "includes 'any error of sufficient magnitude to require reversal on appeal.'" *United States v. Dimora*, 879 F. Supp. 2d 718, 724 (N.D. Ohio 2012), *aff'd*, 750 F.3d 619 (6th Cir. 2014) (quoting *Munoz*, 605 F.3d at 373) (internal citation omitted)). Refusal to give a requested jury instruction "'is reversible error only if the instruction is (1) correct, (2) not substantially covered by the actual jury charge, and (3) so important that failure to give it substantial[ly] impairs [the] defendant's defense.'" *United States v. McCafferty*, 801 F. Supp. 2d 605, 622 (N.D. Ohio 2011), *aff'd*, 482 F. App'x 117 (6th Cir. 2012) (quoting *United States v. Heath*, 525 F.3d 451, 456 (6th Cir. 2008)).

Under Rule 33, a defendant may also move for a new trial "on the ground that the [jury's] verdict was against the manifest weight of the evidence." *Munoz*, 605 F.3d at 373 (internal quotation marks omitted). Under the manifest weight of the evidence standard, the court has broad discretion to consider both the credibility of the witnesses and the weight of the evidence to ensure that there was no miscarriage of justice. *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988). In exercising this discretion, the court sits as a "thirteenth juror" to weigh the evidence and consider the credibility of the witnesses. *Id.* at 266. Unlike the stricter test for reviewing a motion for

acquittal, in deciding a Rule 33 motion based on the weight of the evidence, "the court need not view the evidence in the light most favorable to the verdict." *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985). However, a jury verdict should be vacated "only in the extraordinary circumstance[] where the evidence preponderates heavily against the verdict." *Ashworth*, 836 F.2d at 266 (quoting *United States v. Turner*, 490 F. Supp. 583, 593 (E.D. Mich. 1979)); *see also United States v. Morales*, 910 F.2d 467, 468 (7th Cir. 1990) ("If the complete record, testimonial and physical, leaves a strong doubt as to the defendant's guilt, even though not so strong a doubt as to require a judgment of acquittal, the district judge may be obliged to grant a new trial."); *United States v. Arroyo*, 301 F. Supp. 2d 217, 225 (D. Conn. 2004) (grant of new trial should be reserved for instances where there is real concern that an innocent person may have been convicted).

### III. LAW AND ANALYSIS: LEGAL ERROR

Mr. Jeffries argues that a substantial legal error occurred when the court denied his proposed jury instruction requiring the Government to prove that J.H.'s death was a natural and foreseeable result of Mr. Jeffries's actions. In other words, Mr. Jeffries contends that the Government should have been required to prove proximate causation as to the § 841(b)(1)(C) death enhancement under Count One. Mr. Jeffries explains that in the recent Supreme Court case, *Burrage v. United States*, 571 U.S. 204 (2014), the Supreme Court expressly declined to address the legal question Mr. Jeffries raises here—whether the Government must prove proximate causation with respect to a death enhancement under § 841(b)(1)(C). But in so doing, it acknowledged that in circumstances where a crime requires not just conduct, but a specified result of such conduct, the causation requirement has been normally considered to be a hybrid concept, including but-for causation and proximate causation. Mr. Jeffries also acknowledges that, though the Sixth Circuit has not addressed whether

proximate causation is required to prove a death enhancement under § 841(b)(1)(C), all other Circuits addressing the issue have ruled that proximate cause is not a requirement. Nevertheless, he maintains that relevant precedent in the Sixth Circuit supports a determination that proximate causation is required. Specifically, he refers to *United States v. Martinez*, 588 F.3d 301, 318 (6th Cir. 2009), [hereinafter *Martinez*] wherein the court found proximate cause to be a requirement in respect to a similar provision involving health care fraud.

In response, the Government argues that *Burrage* requires only but-for causation and that the § 841(b)(1)(C) death enhancement operates as a strict liability provision. The Government points to the recent ruling of the Tenth Circuit in *United States v. Burkholder*, 816 F.3d 607 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 623 (2017), finding that proximate causation is not required to prove the § 841(b)(1)(C) death enhancement. It also points to the Circuit cases decided before *Burrage* holding that there was no such proximate cause requirement. The Government also argues that the Sixth Circuit has required only but-for causation with respect to the death enhancement, relying upon cases such as *United States v. Volkman*, 797 F.3d 377 (6th Cir. 2015) and *United States v. Allen*, 716 F. App'x 447 (6th Cir. 2017). The Government also points to language similar to the "resulting in" language in the Sentencing Guideline provisions which have not been found to require proximate cause. Additionally, the Government argues that where Congress does not use the language of legal or proximate cause, there is little reason to require it. Arguing in the alternative, the Government requests that if the court finds that the proximate causation requirement of *Martinez* is controlling, it should finds that the applicable law was substantially covered by the jury charge.

The court finds that a substantial legal error occurred when it failed to instruct the jury that, in order to convict Mr. Jeffries of the § 841(b)(1)(C) death enhancement, it was required to find that

J.H.'s death was a reasonable and foreseeable result of Mr. Jeffries's distribution of fentanyl.

### A. Whether a Legal Error Occurred

Section 841(b)(1)(C) "imposes a 20–year mandatory minimum sentence on a defendant who unlawfully distributes a Schedule I or II drug, when 'death or serious bodily injury results from the use of such substance.'" *Burrage*, 571 U.S. at 206 (quoting § 841(a)(1), (b)(1)(A)-(C)). Because the § 841(b)(1)(C) death enhancement "increase[s] the minimum and maximum sentences to which [a defendant is] exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt." *Burrage*, 571 U.S. at 210 (citations omitted).

The inquiry into whether death results from the use of a distributed controlled substance is one of causation. *See Burkholder*, 816 F.3d at 612. Causation is generally understood to be comprised of both but-for (actual) cause and proximate (legal) cause. The Supreme Court explains:

> The law has long considered causation a hybrid concept, consisting of two constituent parts: actual cause and legal cause. When a crime requires "not merely conduct but also a specified result of conduct," a defendant generally may not be convicted unless his conduct is "both (1) the actual cause, and (2) the 'legal' cause (often called the 'proximate cause') of the result.

*Burrage*, 571 U.S. at 210 (quoting 1 Wayne R. LaFave, *Substantive Criminal Law* § 6.4(a) (2d ed. 2003)) (citations omitted) [hereinafter LaFave]. A leading treatise relied upon in *Burrage* explains that but-for causation typically "means that but for the conduct the result would not have occurred." LaFave, at § 6.4 (3d ed. 2017). But-for causation can also be described as "the straw that broke the camel's back", and thus is considered "*the minimum* requirement for a finding of causation when a crime is defined in terms of conduct causing a particular result." *Burrage*, 571 U.S. at 211 (emphasis added in *Burrage*). On the other hand, proximate causation "generally refers to the basic requirement

that . . . there must be some direct relation between the injury asserted and the injurious conduct alleged . . . ." *Paroline v. United States*, 134 S. Ct. 1710, 1719 (2014). Thus, while "[e]very event has many causes . . .[,] only some of them are proximate . . . ." *Id*. Though the idea of proximate cause "defies easy summary," "[p]roximate cause is often explicated in terms of foreseeability or the scope of the risk created by the predicate conduct." *Id*. (citation omitted).

In *Burrage*, the defendant was convicted for distribution of heroin to a long-time drug user who died after binging on drugs, which included drugs supplied by the defendant. At trial, the court instructed the jury that in order to convict, the government only had to prove that the heroin distributed by defendant was a contributing cause of death. The Eight Circuit Court of Appeals affirmed his conviction. The Supreme Court in *Burrage* granted certiorari on two issues: whether a person could be convicted under the death results provision where his conduct was only the contributing cause of death and whether proximate cause was also a separate requirement. *Burrage*, 571 U.S. at 209. However, the Supreme Court expressly declined to address the second issue and ruled only on the issue of but-for causation—which had not been proven in the underlying case. *Id*. at 209–10; 218–19 ("We granted certiorari on two questions . . . We find it necessary to decide only the first: whether the use of heroin was the actual cause of Banka's death in the sense that § 841(b)(1)(C) requires."). *See also Burkholder*, 816 F.3d at 618–19 ("[*Burrage*] expressly declined to address whether the phrase also embodies a proximate cause requirement.") (citation omitted). The Sixth Circuit also has not ruled on the question presently facing this court, though it has applied the standard of but-for causation, as well as the standard of causation based on whether the drugs provided were an independently sufficient cause of death, when affirming convictions under the § 841(b)(1)(C) death enhancement, after *Burrage* was decided. *See, e.g., United States v. Allen*, 447,

-9-

716 F. App'x 450 (6th Cir. 2017) ("[T]here are two ways to satisfy the causation requirement of 21 U.S.C. § 841(a)(1) with a 'death results' enhancement under § 841(b)(1)(C): one can provide drugs that are either an independent, sufficient cause of the victim's death or a but-for cause."); *United States v. Volkman*, 797 F.3d 377, 392 (6th Cir. 2015) ("[U]se of the drug must have been a but-for cause of the victim's death or injury."). Consequently, the precise question of law at issue here remains an open question in the Sixth Circuit.

In determining the appropriate level of causation, the court begins by examining the language of the § 841(b)(1)(C) death enhancement, specifically the phrase "results from." The statute does not define the phrase "results from," nor does it indicate the level of causation required to prove the death enhancement. § 841(b)(1)(C). *See also Burrage*, 571 U.S. at 210. However, "[a] thing 'results' when it '[a]rise[s] as an effect, issue, or outcome from some action, process or design.'" *Id.* at 210 (quoting 2 The New Shorter Oxford English Dictionary 2570 (1993)). When interpreting the same statutory language at issue here, the *Burrage* court considered the ordinary meaning of the phrase, the traditional understanding of causation in criminal law, case law interpreting similar language, and the rule of lenity. *See Burrage*, 571 U.S. at 210–14. *See also Burkholder*, 816 F.3d at 622–23 (Briscoe, J., dissenting). As Judge Briscoe of the Tenth Circuit concluded, this analytical approach suggests that the *Burrage* court may have viewed the statutory language of "results from" as ambiguous, though it did not expressly declare the language ambiguous, or unambiguous. *Burkholder*, 816 F.3d at 623, n.1 (Briscoe, J., dissenting). This court views the phrase "results from" as broad enough, on its face, to encompass both proximate and but-for causation. *Cf., e.g., United States v. Houston*, 406 F.3d 1121, 1124 (9th Cir. 2005).

Viewing the pertinent statutory language as ambiguous as to the level of causation required,

the court turns to the traditional background principles of criminal liability against which Congress legislates. Such principles were also discussed in *Burrage*. 571 U.S. at 210. As mentioned above, "[p]roximate cause is a standard aspect of causation in criminal law and the law of torts." *Paroline*, 134 S. Ct. at 1720 (citation omitted). In the context of criminal law generally, Professor LaFave explains that when a crime requires "not merely conduct but also a specified result of conduct, the defendant's conduct must be the 'legal' or 'proximate' cause of the result." LaFave, at § 6.4. This is the general rule in criminal law because:

> where the consequences of a determination of guilt are more drastic (death or imprisonment, generally accompanied by moral condemnation, as contrasted with a mere money payment) it is arguable that a closer relationship between the result achieved and that intended or hazarded should be required.

*Id.* at § 6.4(c).

These traditional background principles requiring both but-for and proximate causation, particularly where criminal liability is at issue, are reflected in long-standing Supreme Court case law. The Supreme Court has explained that "[g]iven proximate cause's traditional role in causation analysis, this Court has more than once found a proximate-cause requirement built into a statute that did not expressly impose one." *Paroline*, 134 S. Ct. at 1720 (citations omitted). Likewise, strict liability crimes are "generally disfavored" by the Supreme Court. *States v. U.S. Gypsum Co.*, 438 U.S. 422, 438 (1978). Consequently, penalties imposed as a result of strict liability criminal offenses "commonly are relatively small, and conviction does not grave damage to an offender's reputation." *Morissette v. United States*, 342 U.S. 246, 255 (1952). The mandatory minimum twenty-year sentence of imprisonment and the damage to one's reputation resulting from a federal conviction for causing another's death—both of which are at stake in the present case—certainly do not align with the

Supreme Court's generalizations regarding proximate causation, or its hesitance to impose strict criminal liability.

The preference for proximate causation when imposing strict criminal liability is also demonstrated by the Model Penal Code. Section 2.03(4) of the Model Penal Code instructs: "When causing a particular result is a material element of an offense for which absolute liability is imposed by law, the element is not established unless the actual result is a *probable consequence* of the actor's conduct." (emphasis added).

In addition to the statutory language of the § 841(b)(1)(C) death enhancement in light of the traditional principles discussed above, the court finds that Sixth Circuit precedent also compels the present ruling. In *Martinez*, the Sixth Circuit interpreted the statutory language of "results in death," holding that the government was required to prove proximate causation. 588 F.3d at 318. The defendant in *Martinez* was convicted of committing health care fraud that "result[ed] in death," in violation of 18 U.S.C. § 1347(a). The pertinent language of the § 1347(a) death enhancement is nearly identical to the language at issue here, enhancing the penalty if the defendant's unlawful behavior results in death. Section 1347(a) states that: ("[I]f the violation results in death, such person shall be fined under this title, or imprisoned for any term of years or for life, or both."). When interpreting the meaning of "results in death" in § 1347(a), the *Martinez* court began by noting that the statute, as here, "does not indicate the level of causation required to support application of its enhanced penalties." 588 F.3d at 317. This approach suggests that the *Martinez* court treated the statutory language of "results in death" as ambiguous. The Sixth Circuit then looked to how other circuits interpreted "if death results" in the context of intentional civil rights violations, explaining that the First, Tenth, Fourth, and Second Circuits require proximate causation. *See id.* at 317–18 (citing

*United States v. Marler*, 756 F.2d 206, 215–16 (1st Cir. 1985)); *United States v. Woodlee*, 136 F.3d 1399, 1405 (10th Cir. 1998); *United States v. Harris*, 701 F.2d 1095, 1101 (4th Cir. 1983); *United States v. Guillette*, 547 F.2d 743, 749 (2d Cir. 1976)). The *Martinez* court also explained that the Sixth Circuit ruled that proximate causation is required to show that "bodily injury result[ed]" under 42 U.S.C. § 3631(a), which enhances the penalty for interfering with an individual's housing rights because of the individual's race. *Martinez*, 588 F.3d at 318 (citing *United States v. Wiegand*, No. 93–1735, 1994 WL 714347, at *5, (6th Cir. Dec. 22, 1994)).

As here, the Sixth Circuit in *Martinez* relied upon the "fundamental principle of criminal law" that "a person is held responsible for all consequences proximately caused by his criminal conduct." *Martinez*, 588 F.3d at 318. Furthermore, the Sixth Circuit reasoned that "Congress was aware of principles of legal causation when it determined that a health care fraud violation [that] results in death warrants an enhanced penalty." *Id.* at 318. The court sees no clear distinction between the language interpreted in *Martinez* and the language of § 841(b)(1)(C). In reaching its conclusion, the *Martinez* court directly interpreted the language of "results in the death,", relied upon general principles of causation, did not discuss any unique aspects of § 1347(a) which compelled its holding, and cited interpretations of similar language in statutes regulating different types of crimes. Thus, the broad nature of the *Martinez* court's analysis, addressing the same question here in the context of the § 1347(a) death enhancement, suggests that this court is bound by *Martinez*.

While the Government points to *Volkman* and *Allen*, wherein the Sixth Circuit applied but-for and independently sufficient causation in affirming convictions under § 841(b)(1)(C), the issue of whether proximate causation also applied was not before those courts. 797 F.3d 377, at 392 (6th Cir. 2015; 716 F. App'x 447, 450 (6th Cir. 2017). Consequently, the *Volkman* and *Allen* courts did not

need to engage in statutory interpretation regarding proximate causation, in contrast to the analysis that this court and other courts expressly confronted with the question of proximate causation were obliged to undertake. This court does not take the application of but-for and independently sufficient causation in *Volkman* and *Allen* to preclude the more stringent requirement of proximate causation, just as the *Burrage* decision requiring but-for causation explicitly did not preclude the possibility of also requiring proximate causation.

The court has taken very seriously the fact that every Circuit addressing the issue before *Burrage* had found that no proximate cause was required. See *United States v. Webb*, 655 F.3d 1238, 1250 (10th Cir. 2016); *United States v. De La Cruz*, 514 F.3d 121, 137(1st Cir. 2008); United States v. Houston, 406 F.3d 1121, 1124-1125( 9th Cir. 2005); *United States v. Carbajl*, 290 F.3d 277, 284( 5th Cir. 2002); *United States v. McIntosh*, 236 F. 3d 968, 972 (8th Cir. 2001), *abrogated on other grounds* by *Burrage*, 571 U.S. 204 (2014); *United States v. Robinson*, 167 F.3d 824, 832( 3rd Cir. 1999); *United States v. Patterson*, 38 F.3d 139, 145 (4th Cir. 1994). The court has also seriously reviewed those cases and the cases involving § 841(b)(1)(C) that have ruled on the issue of proximate cause since, *U. S. v. Alvarado*, 816 F.3d 242, 249 (4th Cir. 2016) and *U.S. v Harden*, 893 F.3d. 434, 447 ( 7th Cir 2018) as well a case involving the interpretation of similar language in 841(b)(1)(E), *U.S. v. Burkholder*, 816 F. 3d 607(10th Cir. 2016). The primary reasons advanced by those courts in finding no proximate cause requirement is that Congress could easily have used the words "caused by," instead of "resulting in", that the Congress could have explicitly put a proximate cause requirement into the statute, *see Harden*, 893 F.3d at 448, that the Sentencing Guidelines use language, such as "resulting in" that has not been found to require proximate cause, and that the other Circuits addressing the issue have also found no proximate cause requirement. With all due respect

-14-

to such decisions, I do not find there is such consistency in the way the laws are drafted that we can conclude that when statutes say, "results in," we are to infer that no proximate cause is required. The same can be said of the notion that Congress could have put proximate cause in the statute if it had wanted to impose that requirement As reflected in *Martinez*, courts have found proximate cause to be required in many instances where proximate cause is not explicitly required by the statute. It also seems inapposite to compare Guideline provisions to statutory requirements. See, *Burkholder*, 816 F.3d at 607 (Briscoe, J. dissenting). It must remembered that we start with the common law requirement of hybrid causation --but-for causation and legal or proximate causation. That is the starting place. There needs be a clear showing that Congress has decided to depart from this standard. I do not find that "Congress has unambiguously expressed a desire to deviate from background common law principles" as the court found in *Burkholder*. I think the common law and Sixth Circuit precedent supports the conclusion that proximate cause is required in respect to proving a death enhancement under 841(b)(1)(C).

In reaching its conclusion, the court considers the circumstances which might expose a defendant to the strict liability § 841(b)(1)(C) death enhancement if proximate causation is not required. Consider, similar to the scenario posed in the petitioner's brief in *Burrage*, a defendant who distributes drugs to a user who drives while incapacitated by those drugs. Br. of Pet. at 21, *Burrage*, 571 U.S. The incapacitated user is then hit by a speeding car, which the user clearly would have avoided if not impaired, and is killed as a result. Consider also a defendant who distributes drugs to a second drug trafficker, knowing the second trafficker will then redistribute those same drugs to a third drug trafficker, who finally redistributes those same drugs to a user. The user then overdoses and dies. Or, imagine a defendant who distributes drugs to a buyer who then stores the drugs in a locked

drawer; however, the buyer's roommate steals the key to the drawer, consumes the buyer's drugs, and then overdoses as a result. Or, what if, the defendant sold drugs to a person who dealt drugs for him and that person instead of dealing the drugs as usual consumed them. Without the limitations imposed by proximate causation, each of these hypothetical defendants could be deemed criminally liable for those respective deaths and face the twenty-year mandatory minimum sentence imposed by the § 841(b)(1)(C) death enhancement without the benefit of a determination of probable cause. This court simply cannot conclude that Congress—without saying more than it has in § 841(b)(1)(C)—intended these results, which clearly run contrary to well-established norms of causation in criminal, and in some cases arguably even civil, law. .

For all of the reasons discussed above—and applying the rule of lenity, pursuant to *Moskal v. United States*, 498 U.S. 103, 107-108 (1990)—the court ultimately concludes that "Congress was aware of the principles of legal causation when it" imposed the § 841(b)(1)(C) death enhancement. *Martinez*, 588 F.3d at 318. Furthermore, the relevant sources and evidence do not show an abrogation or altering of this fundamental requirement by Congress. The court finds that its instruction regarding the § 841(b)(1)(C) death enhancement was incorrect, and that it should have instructed the jury that the Government must prove proximate causation in order to convict Mr. Jeffries of the § 841(b)(1)(C) death enhancement.

### B. Whether the Legal Error was Substantial

As discussed above, a substantial legal error with respect to jury instructions occurs where the requested instruction is "'(1) correct, (2) not substantially covered by the actual jury charge, and (3) so important that failure to give it substantial[ly] impairs [the] defendant's defense.'" *United States v. McCafferty*, 801 F. Supp. 2d 605, 622 (N.D. Ohio 2011) (quoting *United States v. Heath*, 525 F.3d

451, 456 (6th Cir. 208)). Having determined above that Mr. Jeffries's proposed instruction with respect to the § 841(b)(1)(C) death enhancement was correct, the court now considers the latter two requirements for substantial legal error.

First, Mr. Jeffries's requested proximate cause instruction was not substantially covered by the actual jury charge. In its actual instructions, the court explicitly stated that the Government was required to "prove beyond a reasonable doubt that but-for the use of the drugs the Defendant distributed, J.H. would not have died." (Tr. of Apr. 5, 2018, at 920.) The court then proceeded to define but-for causation and never mentioned proximate causation. Thus, the court's instruction regarding but-for causation did not substantially cover the requirement of proximate causation, nor did it oblige the jury to determine whether the Government proved proximate causation.

Second, the requested instruction was so important that the failure to give it substantially impaired Mr. Jeffries's defense. The discussion in the preceding section of this Order illustrates the important differences between proximate and but-for causation, including the reasons why proximate causation has traditionally been required with respect to criminal liability. In this case specifically, evidence was presented by both parties suggesting that J.H. was also involved in the distribution of drugs. Specifically, when requesting drugs from Mr. Jeffries on the day of her death, J.H. sent a text message to Mr. Jeffries stating: "Please soon, they're thinking I'm not going to make it good . . . ." Thus, Mr. Jeffries's defense of the § 841(b)(1)(C) death enhancement may have included the argument that J.H.'s death was not a reasonable or foreseeable result of Mr. Jeffries's conduct given J.H.'s expressed intention to redistribute the drugs. In any event, there is little debate that an incorrect jury instruction regarding an element of the offense significantly impairs a defendant's ability to defend himself. *See Heath*, 525 F.3d at 459 (noting that the district court's improper jury instruction

-17-

"did not relate to an element of the offense" when denying defendant's challenge of jury charge).

### IV. LAW AND ANALYSIS: MANIFEST WEIGHT OF THE EVIDENCE

Mr. Jeffries also argues that the manifest weight of the evidence did not support a conviction for Count One, nor the death enhancement under Count One. The court does not address herein Defendant's Motion for a new trial on the basis that the verdict was against the manifest weight of the evidence.

### V. CONCLUSION

For the above-stated reasons, the court grants Defendant's Motion for a New Trial Under Federal Rule of Criminal Procedure 33 (ECF No. 130), on the ground of substantial legal error. The court does not address Defendant's Motion for a New Trial on the basis that the verdict was against the manifest weight of the evidence.

IT IS SO ORDERED.

/s/*SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

October 1, 2018